SD:PP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE APPLE IPHONE CELLULAR DEVICE AND ONE APPLE IPHONE CELLULAR DEVICE, MODEL IPHONE 6 | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE<br><br>Case No. 20-MJ-209 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, DAMON GERGAR, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a detective employed by the New York City Police Department and a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations ("HSI").  I have been a detective for over 11 years, including being assigned to the Vice Major Case Squad for approximately eight years and a Task Force Officer for more than two years with Border Enforcement Security Task Force with the Department of Homeland Security.  My responsibilities include investigations of cases involving the promotion of a sexual performance by a child through the use of electronic devices and the

internet, possession and distribution of child pornography through the use of electronic devices and the internet, as well as dissemination of indecent material to minors, and other incidents of the exploitation of children on the internet.  I have gained expertise in this area through training in classes and daily work related to conducting these types of investigations. As part of my responsibilities, I have been involved in the investigation of numerous child pornography and child exploitation cases.

3.      I have personally participated in the investigation of the offenses discussed below.  I am familiar with the facts and circumstances of this investigation from: my personal participation in the investigation, my review of documents, my training and experience, and discussions I have had with other law enforcement personnel concerning the creation, distribution, and proliferation of child pornography.  Additionally, statements attributable to individuals herein are set forth in sum and substance and in part.

4.      HSI is investigating the coercion or inducement of a minor to have sex, in violation of Title 18, United States Code, Section 2422(b), and the possession, access with intent to view, transportation, receipt, distribution and reproduction of sexually explicit material relating to children, in violation of Title 18, United States Code, Sections 2252 and 2252A.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.      The property to be searched is an APPLE IPHONE CELLULAR DEVICE,

hereinafter "Device-1" and an APPLE IPHONE CELLULAR DEVICE, MODEL IPHONE

6, hereinafter "Device-2" (collectively, the "Devices").  Device-1 is a gray iPhone encased in

a black phone case, and does not list a model type on the exterior of the device.  Device-2 is

an iPhone with a white back, encased in a black and white phone case, and contains Model

A1586 on the back of the phone, indicating the phone is an iPhone 6.  The Devices are

currently in the custody of HSI within the Eastern District of New York.

7.      The applied-for warrant would authorize the forensic examination of the

Devices for the purpose of identifying electronically stored data particularly described in

Attachment B.

## PROBABLE CAUSE

8.      On February 25, 2020, I and other law enforcement officers arrested Steven

Mendez for coercion and enticement of a minor to have sex, in violation of Title 18, United

States Code, Section 2422(b).  The Complaint in support of that arrest is incorporated herein

and attached as Exhibit A.

9.      As set forth in more detail in that complaint, from on or about January 30,

2020 through February 25, 2020, I communicated in an undercover capacity with Mendez.  I

told Mendez that I had previously sexually abused my three-year-old nephew when I

babysat.  As described in Exhibit A, Mendez repeatedly described the explicit sexual abuse

he wanted to perform on the child and arranged to meet in New Jersey to abuse the child.  At

3

one point, the defendant described the child as the "perfect little victim." On February 25, 2020, law enforcement arrested Mendez when he attempted to meet up with the individual he believed to be facilitating the abuse of the three year old. During his <u>Mirandized</u> post-arrest interview, Mendez admitted that he intended to sexually abuse the three year old discussed above and described in explicit terms the sexual acts he planned to do if law enforcement did not intervene.

10.     At the time of his arrest, Mendez possessed the Devices, which were seized incident to his arrest. As described in the complaint, Mendez messaged me over the course of several weeks from a mobile chat application to arrange the meeting to sexually abuse the three year old. When he arrived at the location in New Jersey where he was supposed to engage in the sexual abuse, Mendez messaged me on the mobile chat application to inform me that he had arrived. Less than a minute later, law enforcement agents arrested Mendez. Mendez possessed Device-1 in his hands when he was arrested.

11.     During his <u>Mirandized</u> post-arrest interview, Mendez admitted to possessing child pornography on Device-2. Mendez also voluntarily showed law enforcement approximately 30 videos of child pornography he possessed on Device-2.

12.     In addition, during the course of my undercover conversations with Mendez, Mendez stated that he downloaded child pornography to "an old phone" he has.

13.     Mendez also admitted that he possessed child pornography in his apartment. During his post-arrest interview, Mendez gave law enforcement consent to search his bedroom and two electronic devices contained therein. On February 26, 2020, law

enforcement seized those devices pursuant to Mendez's consent to search, and the seized items are currently being processed.

14.     As discussed above, law enforcement recovered the Devices from Mendez upon his arrest and the Devices are currently in the lawful possession of the HSI within the Eastern District of New York.  In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of HSI.

## **TECHNICAL TERMS**

15.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail;

taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any

digital data.  Depending on the model, a portable media player may have the

ability to store very large amounts of electronic data and may offer additional

features such as a calendar, contact list, clock, or games.

d.   GPS:  A GPS navigation device uses the Global Positioning System to display

its current location.  It often contains records the locations where it has been.

Some GPS navigation devices can give a user driving or walking directions to

another location.  These devices can contain records of the addresses or

locations involved in such navigation.  The Global Positioning System

(generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the

Earth.  Each satellite contains an extremely accurate clock.  Each satellite

repeatedly transmits by radio a mathematical representation of the current

time, combined with a special sequence of numbers.  These signals are sent by

radio, using specifications that are publicly available.  A GPS antenna on Earth

can receive those signals.  When a GPS antenna receives signals from at least

four satellites, a computer connected to that antenna can mathematically

calculate the antenna's latitude, longitude, and sometimes altitude with a high

level of precision.

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device

used for storing data (such as names, addresses, appointments or notes) and

utilizing computer programs.  Some PDAs also function as wireless

communication devices and are used to access the Internet and send and

receive e-mail.  PDAs usually include a memory card or other removable
storage media for storing data and a keyboard and/or touch screen for entering
data.  Removable storage media include various types of flash memory cards
or miniature hard drives.  This removable storage media can store any digital
data.  Most PDAs run computer software, giving them many of the same
capabilities as personal computers.  For example, PDA users can work with
word-processing documents, spreadsheets, and presentations.  PDAs may also
include global positioning system ("GPS") technology for determining the
location of the device.

f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique
numeric address used by computers on the Internet.  An IP address is a series
of four numbers, each in the range 0-255, separated by periods (e.g.,
121.56.97.178).  Every computer attached to the Internet computer must be
assigned an IP address so that Internet traffic sent from and directed to that
computer may be directed properly from its source to its destination.  Most
Internet service providers control a range of IP addresses.  Some computers
have static—that is, long-term—IP addresses, while other computers have
dynamic—that is, frequently changed—IP addresses.

g.   Internet: The Internet is a global network of computers and other electronic
devices that communicate with each other.  Due to the structure of the Internet,
connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

16.     Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

18.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

     a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20.    *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

11

## **CONCLUSION**

21.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

_____
DAMON GERGAR
Task Force Officer
United States Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this
28th day of February, 2020

_____
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

12

# EXHIBIT A

SD:PP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

STEVEN MENDEZ,

        Defendant.

– – – – – – – – – – – –X

COMPLAINT

(T. 18, U.S.C., § 2422(b))

20-MJ-201

EASTERN DISTRICT OF NEW YORK, SS:

       DAMON GERGAR, being duly sworn, deposes and states that he is a

Detective with the New York City Police Department and Task Force Officer with the Border

Enforcement Security Task Force with the Department of Homeland Security, duly appointed

according to law and acting as such.

       On or about January 30, 2020 through February 25, 2020, within the Eastern

District of New York and elsewhere, the defendant STEVEN MENDEZ did, using the mail or

a facility or means of interstate commerce, knowingly attempt to persuade, induce, entice, or

coerce any individual who has not attained the age of 18 years to engage in any sexual activity

for which any person can be charged with a criminal offense.

       (Title 18, United States Code, Section 2422(b)).

       The source of your deponent's information and the grounds for his belief are as

follows[1]:

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary
to establish probable cause to arrest, I have not described all the relevant facts and circumstances

1.      I am a detective employed by the New York City Police Department.  I have been a detective for over 11 years, including being assigned to the Vice Major Case Squad for approximately eight years and a Task Force Officer for more than two years with Border Enforcement Security Task Force with the Department of Homeland Security.  My responsibilities include investigations of cases involving the promotion of a sexual performance by a child through the use of electronic devices and the internet, possession and distribution of child pornography through the use of electronic devices and the internet, as well as dissemination of indecent material to minors, and other incidents of the exploitation of children on the internet.  I have gained expertise in this area through training in classes and daily work related to conducting these types of investigations.  As part of my responsibilities, I have been involved in the investigation of numerous child pornography and child exploitation cases.

2.      I have personally participated in the investigation of the offenses discussed below.  I am familiar with the facts and circumstances of this investigation from: my personal participation in the investigation, my review of documents, my training and experience, and discussions I have had with other law enforcement personnel.  Additionally, statements attributable to individuals herein are set forth in sum and substance and in part.

3.      On or about January 30, 2020, I began working in an undercover capacity via an Internet-connected smartphone to conduct an investigation into the defendant, STEVEN MENDEZ.  A confidential source ("CS") told law enforcement that he had previously met the defendant for sex at the defendant's apartment in Brooklyn, New York and

of which I am aware.

watched child pornography with him, and that, during that meeting, the defendant expressed a desire to the CS to have sex with underage children.   The CS, who used the moniker "buddha4life," and only knew the defendant by the username "kevin_hoe" on a mobile chat application, gave me permission to use the CS's phone and moniker to communicate with MENDEZ on the chat application.[2]   All the chats between the defendant and I discussed below have been conducted on a telephone that is now controlled by the Department of Homeland Security.   For the conversations discussed below in paragraphs four to 13, I have captured and maintained them by recording videos of the conversations and downloading the data from the chat application.

4.      On or about January 30, 2020, I pretended to be "buddha4life" and contacted "kevin_hoe," later identified as the defendant, STEVEN MENDEZ, through the mobile chat application.   I pretended that I sexually abused my three year old nephew when I babysat.   The defendant immediately expressed a desire to watch.   Later in that conversation, when discussing the next time I would babysit, the defendant stated "so there might be a chance I can fuck him," and "send me pics of him I need to see him naked." When asked what he would want to do with the nephew, the defendant stated "Pick him up and eat his ass and get him to suck you off.   Not sure yet."

---

[2] The CS is indicted for attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b) and possession of child pornography in violation of 18 U.S.C. § 2252, and is currently in custody.   He is providing information to the government with the hope to receive a cooperation agreement.   As discussed below, the information the CS provided merely allowed law enforcement to begin an undercover conversation with the defendant and it is my conversations with the defendant, and not the information the CS provided, that I respectfully submit supports probable cause that the defendant committed the charged offense.

4

5.      After that initial conversation, the defendant repeatedly contacted me. For example, on February 11, 2020, the defendant messaged me "We babysitting tomorrow?" When I did not respond, the defendant messaged me again on February 12, February 15, and February 20, 2020.   When I finally responded on February 21, 2020, the defendant expressed concern that I had "got[ten] caught."   The defendant then stated "I want to shove my dick in your nephew."   Later, the defendant reiterated, "I really want your nephew."

6.      When we talked more about meeting at the three-year-old's mother's home in New Jersey when I was supposedly babysitting, the defendant, STEVEN MENDEZ, expressed concern about the house having hidden cameras and the neighbors seeing him. During a separate conversation on or about February 22, 2020, when the defendant expressed concern that the victim may say something, I reiterated that the child was not even three years old so "he can't even really talk much," and the defendant responded "wow that's hot."

7.      The defendant also expressed a desire to sexually assault other children. When I discussed having oral sex with a 14-year-old, he said I "should [have] recorded it" using a hidden camera.   He also said he wanted to get the 14-year-old "shit face drunk like knocked out I don't want him to remember anything."   He later said "I still want to fuck him … but without his consent."

8.      During the course of these conversations, I and other law enforcement agents conducted an investigation to determine the true identity of "kevin_hoe," the individual communicating with me through the CS's phone.   Law enforcement agents determined that the "kevin_hoe" account on the mobile chat application used the same e-mail address that the defendant, STEVEN MENDEZ, listed on his United States passport application.   In addition,

the user "kevin_hoe" on one occasion in February 2020 logged into the mobile chat application using an IP address that is associated with home internet access from an address in Brooklyn, New York that is registered to the defendant's father.   Subsequent investigation determined that the defendant lives at this address.

9.      On February 21, 2020, I told the defendant, STEVEN MENDEZ, that I was going to babysit my nephew on February 25, 2020 at his mother's house in Jersey City, New Jersey.   During the course of this conversation, the defendant stated that he could arrive at 11:00 p.m.   When I said that the time was late, the defendant stated "If it's late we'll we're fucking him all night."   The defendant then described in explicit terms the sexual acts he wanted to perform on the three-year-old child.   The defendant also reiterated his desire to record this abuse.   The defendant described the three year old as the "perfect little victim."

10.     On that same day, I messaged the defendant that we would meet at the nephew's mother's house at an address on Greene Street in Jersey City, New Jersey to babysit the three year old.   The defendant asked how to take the train to the location.

11.     During the course of these conversations, the defendant, STEVEN MENDEZ, stated that he wanted me, him, and my nephew to wear masks when he recorded the abuse.   The defendant stated that he ordered the masks off of Amazon, and later, on February 23, 2020, sent a picture of an individual wearing the mask.   The defendant stated "going to be a hot porno."

12.     On February 25, 2020, I asked the defendant, STEVEN MENDEZ, how he was feeling and the defendant responded "nervous but excited."   The defendant also stated that he was "going to put my dick inside him."   The defendant also reiterated that he wanted

to record the abuse.   Later that day, the defendant said that he was packing lubricant, condoms, towels, and the masks.

13.     On February 25, 2020, at approximately 6:25 p.m., the defendant STEVEN MENDEZ messaged me that he was going to walk his dog and then travel to meet me in New Jersey.   Shortly thereafter, law enforcement observed an individual matching the description of the defendant exit the defendant's residence in Brooklyn, New York with a dog, and then return to the residence.   At approximately 6:40 p.m., law enforcement observed the defendant leave his residence again.   At approximately 7:45 p.m., the defendant messaged me that he had arrived at the location in New Jersey.   At that time, I and other law enforcement officers observed the defendant outside the address on Greene Street.   Law enforcement then approached the individual, who responded to the name "Steven," and placed him under arrest.   At the time of his arrest, the defendant possessed lubricant, condoms, and baby wipes, as well as the masks described above that he said we would wear when recording the sexual abuse of the three-year-old.

14.     After his arrest, I read the defendant, STEVEN MENDEZ, his Miranda rights, which he waived, and he signed a Miranda waiver form.   The defendant then admitted that he wrote the messages quoted above.   The defendant admitted that he intended to sexually abuse the three year old discussed above and described in explicit terms the sexual acts he planned to do if law enforcement did not intervene.   The defendant admitted he traveled to New Jersey with the intent to videotape the abuse of the three-year-old child.   In addition, the defendant also admitted that he possessed child pornography at his apartment

7

and on one of the mobile phones he had on him at the time of the arrest, and the defendant

voluntarily showed law enforcement the child pornography videos on the mobile phone.

      WHEREFORE, your deponent respectfully requests that the defendant

STEVEN MENDEZ be dealt with according to law.

DAMON GERGAR
Task Force Officer
United States Department of Homeland Security,
Homeland Security Investigations


Sworn to before me this
26th day of February, 2020

THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

1.      The property to be searched is an APPLE IPHONE CELLULAR DEVICE,

hereinafter "Device-1" and an APPLE IPHONE CELLULAR DEVICE, MODEL IPHONE

6, hereinafter "Device-2" (collectively, the "Devices").  Device-1 is a gray iPhone encased in

a black phone case, and does not list a model type on the exterior of the device.  Device-2 is

an iPhone with a white back encased in a black and white phone case, and contains Model

A1586 on the back of the phone, indicating the phone is an iPhone 6.  The Devices are

currently in the custody of HSI within the Eastern District of New York.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations

of 18 U.S.C. §§ 2251, 2252, and 2252A, and 2422(b) since January 30, 2020, including:

   a.   evidence involving the coercion or inducement of minors to have sex, in
        violation of 18 U.S.C. § 2422(b).

   b.   images of child pornography and files containing images of child pornography
        and records, images, information or correspondence pertaining to the
        possession, access with intent to view, receipt and distribution of sexually
        explicit material relating to children, in violation 18 U.S.C. §§ 2252 and
        2252A, in any form wherever they may be stored or found;

   c.   motion pictures, films, videos, and other recordings of visual depictions of
        minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

      d.  records and information pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connection with the purchase, sale, trade or transmission of any visual depiction of minors engaged in sexually explicit conduct;

      e.  records and information concerning any Internet accounts used to possess, receive or distribute child pornography; and

2.     Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

      a.  records of Internet Protocol addresses used;

      b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>ONE APPLE IPHONE CELLULAR DEVICE AND ONE<br>APPLE IPHONE CELLULAR DEVICE, MODEL IPHONE 6 | )<br>)<br>)<br>)<br>)<br>) |

Case No.    20-MJ-209

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before _____March 12, 2020_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____the Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*     ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:     February 28, 2020 at 7:26 p.m.        *Robert Levy*
                                                                              *Judge's signature*

City and state:     Brooklyn, New York                    Hon. Robert M. Levy          U.S.M.J.
                                                                                    *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>   20-MJ-209 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

1.      The property to be searched is an APPLE IPHONE CELLULAR DEVICE,
hereinafter "Device-1" and an APPLE IPHONE CELLULAR DEVICE, MODEL IPHONE
6, hereinafter "Device-2" (collectively, the "Devices").  Device-1 is a gray iPhone encased in
a black phone case, and does not list a model type on the exterior of the device.  Device-2 is
an iPhone with a white back encased in a black and white phone case, and contains Model
A1586 on the back of the phone, indicating the phone is an iPhone 6.  The Devices are
currently in the custody of HSI within the Eastern District of New York.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations
of 18 U.S.C. §§ 2251, 2252, and 2252A, and 2422(b) since January 30, 2020, including:

   a.   evidence involving the coercion or inducement of minors to have sex, in
        violation of 18 U.S.C. § 2422(b).

   b.   images of child pornography and files containing images of child pornography
        and records, images, information or correspondence pertaining to the
        possession, access with intent to view, receipt and distribution of sexually
        explicit material relating to children, in violation 18 U.S.C. §§ 2252 and
        2252A, in any form wherever they may be stored or found;

   c.   motion pictures, films, videos, and other recordings of visual depictions of
        minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

d.   records and information pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connection with the purchase, sale, trade or transmission of any visual depiction of minors engaged in sexually explicit conduct;

e.   records and information concerning any Internet accounts used to possess, receive or distribute child pornography; and

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a.   records of Internet Protocol addresses used;

b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.